1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

ANTOUN NADER, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

WESTERN WASHINGTON MEDICAL GROUP, INC., P.S.,

        Defendant.

Case No. 2:23-cv-01836

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiff Antoun Nader ("Plaintiff") brings this class action against Defendant Western Washington Medical Group, Inc., P.S. ("Defendant") for its failure to properly secure and safeguard Plaintiff's and Class Members' protected health information ("PHI"), personally identifiable information ("PII"), stored within Defendant's information network.

## <u>INTRODUCTION</u>

1.    Defendant is a group comprising over 100 medical providers in Western Washington State.

2.    Defendant acquired, collected, and stored Plaintiff's and Class Members' PHI/PII.

3.    At all relevant times, Defendant knew or should have known, that Plaintiff and Class Members would use Defendant's services to store and/or share sensitive data, including

CLASS ACTION COMPLAINT – 1

highly confidential PHI/PII.

4.      On no later than August 26, 2023, upon information and belief, unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' PHI/PII as hosted with Defendant, with the intent of engaging in the misuse of the PHI/PII, including marketing and selling Plaintiff's and Class Members' PHI/PII.

5.      The total number of individuals who have had their data exposed due to Defendant's failure to implement appropriate security safeguards is unknown at this time but is estimated to be in the hundreds of thousands based on Defendant's clientele.

6.      Personal health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), which may include test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

7.      Personally identifiable information ("PII") generally incorporates information that can be used to  distinguish or trace an individual's identity, and is generally defined to include certain identifiers  that do not on their face name an individual, but that is considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers).

8.      The vulnerable and potentially exposed data at issue of Plaintiff and the Class stored on Defendant's information network, includes, without limitation: first and last name, address, Social Security number, date of birth, medical record number, health insurance policy number, and information about your medical history, mental or physical condition, or medical diagnosis or treatment.

9.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PHI/PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable,

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

10.    As a result, the PHI/PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future.

11.    Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

12.    Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

13.    Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

14.    Defendant is headquartered and routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

15.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendant does business in this Judicial District.

## THE PARTIES

**Plaintiff Antoun Nader**

16.    Plaintiff Antoun Nader is an adult individual and, at all relevant times herein, a resident and citizen of Washington, residing in Everett, Washington. Plaintiff is a victim of the Data Breach.

CLASS ACTION COMPLAINT – 3

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

17.    At all times herein relevant, Plaintiff is and was a member of the Class.

18.    Plaintiff's information was stored with Defendant as a result of their relationship with Defendant.

19.    As required in order to obtain services from Defendant, Plaintiff provided Defendant with highly sensitive health, personal, and insurance information who then possessed and controlled it. Plaintiff trusted that Defendant would use reasonable measures to protect it according to its internal policies as well as state and federal law.

20.    Plaintiff reasonably believed that a portion of the funds he paid Defendant for treatment services would be used to provide adequate data security for his PHI/PII.

21.    Plaintiff's information was among the data accessed by an unauthorized third-party in the Data Breach.

22.    Plaintiff received a letter from Defendant, dated November 6, 2023, stating that their PHI/PII was involved in the Data Breach (the "Notice").

23.    Plaintiff was unaware of the Data Breach until receiving that letter.

24.    Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for three months.

25.    Defendant exposed Plaintiff's PHI/PII for theft by cybercriminals and sale on the dark web.

26.    As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring their accounts with heightened scrutiny and time spent seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach.

27.    Plaintiff was also injured by the material risk to future harm they suffer based on Defendant's breach; this risk is imminent and substantial because Plaintiff's data has been exposed in the breach, the data involved, including Social Security numbers and healthcare

CLASS ACTION COMPLAINT – 4

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

information, is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, given Defendant's clientele, that some of the Class's information that has been exposed has already been misused.

28.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of their PHI/PII—a condition of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

29.    Plaintiff, as a result of the Data Breach, has increased anxiety for their loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling their PHI/PII.

30.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PHI/PII, in combination with their name, being placed in the hands of unauthorized third parties/criminals.

31.    Plaintiff has a continuing interest in ensuring that their PHI/PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**Defendant Western Washington Medical Group, Inc., P.S.**

32.    Defendant Western Washington Medical Group, Inc., P.S., is a Washington professional service corporation with its principal place of business at 1728 W Marine View Dr., Ste 110, Everett, WA, 98201.

## **CLASS ACTION ALLEGATIONS**

33.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class:

> All individuals within the United States of America whose PHI/PII was exposed to unauthorized third-parties as a result of the data breach experienced by Defendant on August 26, 2023.

34.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

35.    Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

36.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

37.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible.

38.    <u>Commonality</u>: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

    a.    Whether Defendant had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII;

    b.    Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

    c.    Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

    d.    Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

    e.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    f.    Whether Defendant adequately, promptly, and accurately informed

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Plaintiff and Class Members that their PHI/PII had been compromised;

g. How and when Defendant actually learned of the Data Breach;

h. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Plaintiff and Class Members;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PHI/PII of Plaintiff and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendant's wrongful conduct; and

l. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

39. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

40. <u>Adequacy of Representation</u>: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

41. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

42. <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

43.     The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

44.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

45.     Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

46.     Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the PHI/PII of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

47.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Failed Response to the Breach

48.     Not until months after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose PHI/PII Defendant confirmed was potentially compromised as a result of the Data Breach.

49.     The Notice included, *inter alia*, basic details of the Data Breach, Defendant's

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

recommended next steps, and Defendant's claims that it had learned of the Data Breach on August 26, 2023, and completed a review thereafter.

50.    Upon information and belief, the unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' PHI/PII with the intent of engaging in the misuse of the PHI/PII, including marketing and selling Plaintiff's and Class Members' PHI/PII.

51.    Defendant had and continues to have obligations created by HIPAA, applicable federal and state law as set forth herein, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiff's and Class Members' PHI/PII confidential and to protect such PHI/PII from unauthorized access.

52.    Plaintiff and Class Members were required to provide their PHI/PII to Defendant as a result of their dealings, and in furtherance of this relationship, Defendant created, collected, and stored Plaintiff and Class Members with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

53.    Despite this, Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used, and what steps are being taken, if any, to secure their PHI/PII going forward.

54.    Plaintiff and Class Members are, thus, left to speculate as to where their PHI/PII ended up, who has used it, and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

55.    Unauthorized individuals can now easily access the PHI/PII of Plaintiff and Class Members.

**Defendant Collected/Stored Class Members' PHI/PII**

56.    Defendant acquired, collected, and stored and assured reasonable security over Plaintiff's and Class Members' PHI/PII.

57.    As a condition of its relationships with Plaintiff and Class Members, Defendant

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 ● FAX 608.509.4423
www.turkestrauss.com

required that Plaintiff and Class Members entrust Defendant with highly sensitive and confidential PHI/PII.

58.    Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

59.    By obtaining, collecting, and storing Plaintiff's and Class Members' PHI/PII, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiff's and Class Members' PHI/PII from unauthorized disclosure.

60.    In fact, Defendant promises in its Notice of Privacy Practices that it will "maintain the privacy of your health information" and that it "will not disclose your information to others unless you tell us to do so…"[1]

61.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PHI/PII.

62.    Plaintiff and Class Members relied on Defendant to keep their PHI/PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

63.    Defendant could have prevented the Data Breach, which began no later than August 26, 2023, by adequately securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class Members' PHI/PII.

64.    Defendant's negligence in safeguarding Plaintiff's and Class Members' PHI/PII is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

65.    Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PHI/PII from being compromised.

---

[1] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wwmedgroup.com/wp-content/uploads/ENT-Notice-of-Privacy-Practices.pdf (last visited Nov. 27, 2023).

CLASS ACTION COMPLAINT – 10

66.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PHI/PII for theft and sale on the dark web.

67.     In response to the Data Breach, Defendant contends that it has "reviewed and enhanced out technical safeguards to prevent a similar incident.[2] Though Defendant fails to expand on what these alleged "enhancements" are, such enhancements should have been in place before the Data Breach.

68.     Through its Breach Notice, Defendant recognized its own failure to implement safeguards in accordance with its internal policies, state law, and federal law, as well as the actual imminent harm and injury resulting from the Data Breach, insisting that, despite the Data Breach evidencing otherwise, "WWMG takes the privacy and security of information in its possession very seriously", promising that "Data security is one of our highest priorities."[3]

69.     On information and belief, Defendant has offered twelve months of complimentary credit monitoring services to victims during that time, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PHI/PII that cannot be changed, such as Social Security numbers.

70.     Even with twelve months of credit monitoring, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PHI/PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

71.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PHI/PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

72.     On information and belief, Defendant failed to adequately train its IT and data

---

[2] https://www.wwmedgroup.com/notice-of-data-security-incident/ (Last visited November 28, 2023)

[3] *Id.*

CLASS ACTION COMPLAINT – 11

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' PHI/PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PHI/PII.

**The Data Breach was a Foreseeable Risk of which Defendant was on Notice.**

73.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

74.    In light of recent high profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' PHI/PII would be targeted by cybercriminals.

75.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[4] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[5]

76.    Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime." [6]

77.    Cyberattacks on medical systems and healthcare and healthcare adjacent companies like Defendant have become so notorious that the FBI and U.S. Secret Service have

---

[4]    2021 Data Breach Annual Report, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited June 5, 2023).
[5] *Id*.
[6]    Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited March 13, 2023).

CLASS ACTION COMPLAINT – 12

issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[7]

78.    In fact, many high-profile ransomware attacks have occurred in healthcare and healthcare adjacent companies, with an estimated that nearly half of all ransomware attacks being carried out are on healthcare companies, and with 85% of those attacks being ransomware similar to the one occurring here.[8]

79.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including WWMG.

**Defendant Had an Obligation to Adhere to FTC Guidelines**

80.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PHI/PII .

81.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.    protect the sensitive consumer information that they keep;

b.    properly dispose of PHI/PII that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

82.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

---

[7] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 13, 2023).
[8] Ransomware explained, CSO, https://www.csoonline.com/article/563507/what-is-ransomware-how-it-works-and-how-to-remove-it.html (last visited July 15, 2023);

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

83.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

84.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

85.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers, or in this case, patients' PHI/PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**Defendant Had an Obligation to Protect the Stolen Information under HIPAA**

86.    Defendant's failure to adequately secure Plaintiff's and Class Members' sensitive data breaches duties it owes Plaintiff and Class Members under statutory and common law. Under HIPAA, health insurance providers have an affirmative duty to keep patients' Protected Health Information private. As a covered entity, Defendant has a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' data. Moreover, Plaintiff and Class Members surrendered their highly sensitive personal data to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their data, independent of any statute.

87.    Because Defendant is covered by HIPAA (45 C.F.R. § 160.102), it is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Part 160 and Part 164, Subparts A and C.

88.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

89.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

90.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronically protected health information." 45 C.F.R. § 164.302.

91.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

92.    HIPAA's Security Rule requires Defendant to do the following:

   a.    Ensure the confidentiality, integrity, and availability of all electronically protected health information the covered entity or business associate creates, receives, maintains, or transmits;

   b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

   c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

   d.    Ensure compliance by its workforce.

93.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronically protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

94.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following the discovery of the breach."

95.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

96.      Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PHI/PII of Plaintiff and Class Members.

97.     Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the PHI/PII was adequately secured and protected.

98.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PHI/PII in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

99.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

100.     Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

101.     Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII from theft because such an inadequacy would be a material fact in the decision to entrust this PHI/PII to Defendant.

102.     Defendant owed a duty of care to Plaintiff and Class Members because they were

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

foreseeable and probable victims of any inadequate data security practices.

103.    Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

104.    PHI/PII are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

105.    Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[9]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[10]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[11]

106.    Identity thieves can use PHI/PII, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

107.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed November 27, 2023).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed November 27, 2023).

[11] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed November 27, 2023).

CLASS ACTION COMPLAINT – 17

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1   until the damage is done.

2   108.    There may be a time lag between when harm occurs versus when it is discovered,

3   and also between when PHI/PII is stolen and when it is used: according to the U.S.

4   Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

5   [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year

6   or more before being used to commit identity theft. Further, once stolen data have been sold or

7   posted on the Web, fraudulent use of that information may continue for years. As a result, studies

8   that attempt to measure the harm resulting from data breaches cannot necessarily rule out all

9   future harm.[12]

10  109.    As a result of this lag, it can take victims years to spot identity or PII and PHI theft,

11  giving criminals plenty of time to use that information for cash.

12  110.    One such example of criminals using PHI/PII for profit is the development of

13  "Fullz" packages. Cyber-criminals can cross-reference two sources of PHI/PII to marry

14  unregulated data available elsewhere to criminally stolen data with an astonishingly complete

15  scope and degree of accuracy in order to assemble complete dossiers on individuals. These

16  dossiers are known as "Fullz" packages.

17  111.    The development of "Fullz" packages means that stolen PHI/PII from the Data

18  Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone

19  numbers, email addresses, and other unregulated sources and identifiers. In other words, even if

20  certain information such as emails, phone numbers, or credit card numbers may not be included

21  in the PHI/PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz

22  package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and

23  scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class,

24  and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and

25  other members of the proposed Class's stolen PHI/PII is being misused, and that such misuse is

26

27  ---
[12] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:*
http://www.gao.gov/new.items/d07737.pdf (last accessed November 27, 2023).

CLASS ACTION COMPLAINT – 18

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 ● FAX 608.509.4423
www.turkestrauss.com

fairly traceable to the Data Breach.

112.    Here, Defendant knew of the importance of safeguarding PHI/PII and of the foreseeable consequences that would occur if Plaintiff's and Class Members' PHI/PII were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

113.    As detailed above, Defendant is a sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

114.    Defendant's failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PHI/PII and take other necessary steps to mitigate the harm caused by the Data Breach.

115.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a. The loss of the opportunity to control how their PHI/PII is used;

   b. The diminution in value of the PHI/PII;

   c. The compromise and continuing publication of their PHI/PII;

   d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

   f. Delay in receipt of tax refund monies;

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

g.    Unauthorized use of stolen PHI/PII; and

h.    The continued risk to their PHI/PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PHI/PII in their possession.

116.    Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PHI/PII; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**Defendant Failed to Follow Industry Standards**

117.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

118.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

119.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

120.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLAIMS FOR RELIEF

### COUNT ONE
**Negligence**
**(On behalf of the Class)**

121.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

122.    At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PHI/PII and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PHI/PII of Plaintiff and Class Members in its computer systems and on its networks.

123.    Among these duties, Defendant was expected:

a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in its possession;

b.    to protect Plaintiff's and Class Members' PHI/PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.    to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

d.    to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PHI/PII.

124.    Defendant knew that the PHI/PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and

CLASS ACTION COMPLAINT – 21

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    probable victims of any inadequate security practices.

2        125.    Defendant knew, or should have known, of the risks inherent in collecting and

3    storing PHI/PII, the vulnerabilities of its data security systems, and the importance of adequate

4    security.

5        126.    Defendant knew about numerous, well-publicized data breaches.

6        127.    Defendant knew, or should have known, that its data systems and networks did not

7    adequately safeguard Plaintiff's and Class Members' PHI/PII.

8        128.    Only Defendant was in the position to ensure that its systems and protocols were

9    sufficient to protect the PHI/PII that Plaintiff and Class Members had entrusted to it.

10       129.    Defendant breached its duties to Plaintiff and Class Members by failing to provide

11   fair, reasonable, or adequate computer systems and data security practices to safeguard their

12   PHI/PII.

13       130.    Because Defendant knew that a breach of its systems could damage thousands of

14   individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect

15   its data systems and the PHI/PII contained therein.

16       131.    Plaintiff's and Class Members' willingness to entrust Defendant with their PHI/PII

17   was predicated on the understanding that Defendant would take adequate security precautions.

18       132.    Moreover, only Defendant had the ability to protect its systems and the PHI/PII is

19   stored on them from attack. Thus, Defendant had a special relationship with Plaintiff and Class

20   Members.

21       133.    Defendant also had independent duties under state and federal laws that required

22   Defendant to reasonably safeguard Plaintiff's and Class Members' PHI/PII and promptly notify

23   them about the Data Breach. These "independent duties" are untethered to any contract between

24   Defendant, Plaintiff, and/or the remaining Class Members.

25       134.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant has a duty to provide fair and

26   adequate computer systems and data security practices to safeguard Plaintiff's and the Class's

27   PHI/PII.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

135.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' PHI/PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's PHI/PII.

136.    Defendant breached its duty to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PHI/PII.

137.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

138.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

139.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PHI/PII.

140.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PHI/PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct is particularly unreasonable given the nature and amount of PHI/PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    would result to individuals in the event of a breach, which ultimately came to pass.

2        141.    The harm that has occurred is the type of harm the FTC Act is intended to guard

3    against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

4    because of their failure to employ reasonable data security measures and avoid unfair and

5    deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

6        142.    Defendant violated its duty under HIPAA by failing to use reasonable measures to

7    protect their PHI and by not complying with applicable regulations detailed *supra*. Here too,

8    Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII

9    Defendant collected and stored and the foreseeable consequences of a data breach, including,

10   specifically, the immense damages that would result to individuals in the event of a breach, which

11   ultimately came to pass.

12       143.    Defendant owed a duty of care to Plaintiff and members of the Class because it

13   was foreseeable that Defendant's failure to adequately safeguard their PHI/PII in accordance with

14   state-of-the-art industry standards concerning data security would result in the compromise of

15   that PHI/PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton

16   and reckless disregard for the security and confidentiality of Plaintiff's and the Class's PHI/PII

17   by disclosing and providing access to this information to unauthorized third parties and by failing

18   to properly supervise both the way the PHI/PII was stored, used, and exchanged, and those in

19   their employment who were responsible for making that happen.

20       144.    Defendant owed these duties to Plaintiff and members of the Class because they

21   are members of a well-defined, foreseeable, and probable class of individuals whom Defendant

22   knew or should have known would suffer injury-in-fact from Defendant's inadequate security

23   protocols. Defendant actively sought and obtained Plaintiff's and the Class's PHI/PII.

24       145.    The risk that unauthorized persons would attempt to gain access to the PHI/PII and

25   misuse it was foreseeable. Given that Defendant holds vast amounts of PHI/PII, it was inevitable

26   that unauthorized individuals would attempt to access Defendant's databases containing the

27   PHI/PII—whether by malware or otherwise.

CLASS ACTION COMPLAINT – 24

146.    PHI/PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PHI/PII of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

147.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the PHI/PII of Plaintiff and the Class which actually and proximately caused the Data Breach and Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

148.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

149.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages.

150.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PHI/PII to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their PHI/PII.

151.    Defendant breached its duty to notify Plaintiff and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Plaintiff and Class Members and then by failing and continuing to fail to provide Plaintiff and Class Members sufficient information regarding the breach.

152.    To date, Defendant has not provided sufficient information to Plaintiff and Class

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  Members regarding the extent of the unauthorized access and continues to breach its disclosure

2  obligations to Plaintiff and Class Members.

3       153.   Further, through its failure to provide timely and clear notification of the Data

4  Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from

5  taking meaningful, proactive steps to secure their PHI/PII.

6       154.   There is a close causal connection between Defendant's failure to implement

7  security measures to protect the PHI/PII of Plaintiff and Class Members and the harm suffered,

8  or risk of imminent harm suffered by Plaintiff and Class Members.

9       155.   Defendant's wrongful actions, inactions, and omissions constituted (and continue

10 to constitute) common law negligence.

11      156.   The damages Plaintiff and Class Members have suffered (as alleged above) and will

12 suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

13      157.   As a direct and proximate result of Defendant's negligence and negligence *per se*,

14 Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i)

15 actual identity theft; (ii) the loss of the opportunity of how their PHI/PII is used; (iii) the

16 compromise, publication, and/or theft of their PHI/PII; (iv) out-of-pocket expenses associated

17 with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized

18 use of their PHI/PII; (v) lost opportunity costs associated with effort expended and the loss of

19 productivity addressing and attempting to mitigate the actual and future consequences of the Data

20 Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and

21 recover from embarrassment and identity theft; (vi) the continued risk to their PHI/PII, which

22 may remain in Defendant's possession and is subject to further unauthorized disclosures so long

23 as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class

24 Members' PHI/PII in its continued possession; and (vii) future costs in terms of time, effort, and

25 money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII

26 compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class

27 Members.

CLASS ACTION COMPLAINT – 26

158.     As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

159.     Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PHI/PII, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI/PII in its continued possession.

## COUNT TWO
### Breach of Implied Contract
### (On behalf of the Class)

160.     Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

161.     Through its course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PHI/PII.

162.     Defendant required Plaintiff and Class Members to provide and entrust their PHI/PII as a condition of obtaining Defendant's services.

163.     Defendant solicited and invited Plaintiff and Class Members to provide their PHI/PII as part of Defendant's regular business practices.

164.     Plaintiff and Class Members accepted Defendant's offers and provided their PHI/PII to Defendant.

165.     As a condition of their relationship with Defendant, Plaintiff and Class Members provided and entrusted their PHI/PII to Defendant.

166.     In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Class Members if their data had been breached and compromised or stolen.

167.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PHI/PII to Defendant, in exchange for, amongst other things, the protection of their PHI/PII.

168.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

169.    Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PHI/PII and by failing to provide timely and accurate notice to them that their PHI/PII was compromised as a result of the Data Breach.

170.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT THREE
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Class)

171.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

172.    Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

173.    Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

174.    Defendant breached the implied covenant of good faith and fair dealing by failing

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

to maintain adequate computer systems and data security practices to safeguard PHI/PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PHI/PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

175. Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**COUNT FOUR**
**Unjust Enrichment**
**(On behalf of the Class)**

176. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

177. By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

178. Defendant, prior to and at the time Plaintiff and Class Members entrusted their PHI/PII to Defendant, caused Plaintiff and Class Members to reasonably believe that Defendant would keep such PHI/PII secure.

179. Defendant was aware, or should have been aware, that reasonable patients and consumers would have wanted their PHI/PII kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were sub-standard for that purpose.

180. Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class Members' decisions to seek services therefrom.

181. Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

182. Instead, Defendant suppressed and concealed such information. By concealing and

CLASS ACTION COMPLAINT – 29

suppressing that information, Defendant denied Plaintiff and Class Members the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiff and Class Members.

183.    Defendant was unjustly enriched at the expense of Plaintiff and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members; however, Plaintiff and Class Members did not receive the benefit of their bargain because they paid for products and or services that did not satisfy the purposes for which they bought/sought them.

184.    Since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from these transactions.

185.    Plaintiff and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**COUNT FIVE**
**Violation of the Washington Consumer Protection Act, RCW § 19.86,** *et seq.*
**(On behalf of the Class)**

186.    Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

187.    Defendant is a "person" under the Washington Consumer Protection Act, RCW § 19.86.101(1), and it conducts "trade" and "commerce" under RCW § 19.86.010(2).

188.    Plaintiff and other members of the proposed Class are "persons" under RCW § 19.86.010(1).

189.    Defendant's failure to safeguard the PHI/PII exposed in the Data Breach constitutes an unfair act that offends public policy.

CLASS ACTION COMPLAINT – 30

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

190.    Defendant's failure to safeguard the PHI/PII compromised in the Data Breach caused Plaintiff and the proposed Class substantial injury. Defendant's failure is not outweighed by any countervailing benefits to consumers or competitors, and it was not reasonably avoidable by consumers.

191.    Defendant's failure to safeguard the PHI/PII disclosed in the Data Breach, and its failure to give time and complete notice of the Data Breach to victims, is unfair because these acts and practices are immoral, unethical, oppressive, and unscrupulous.

192.    Defendant's unfair acts or practices occurred in its trade or business and have injured and can injure a substantial portion of the public. Defendant's general conduct as alleged injures the public interest, and the acts Plaintiff complains of are ongoing and have a substantial likelihood of being repeated.

193.    As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and the proposed Class suffered an injury in fact.

194.    As a result of Defendant's conduct, Plaintiff's and members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PHI/PII by criminals, improper disclosure of their PHI/PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's conduct, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

195.    Plaintiff and the proposed Class are entitled to an order enjoining the conduct complained of and ordering Defendant to take remedial measures to prevent similar data breaches; actual damages; treble damages under § 19.86.090; and the costs of bringing this suit, including reasonable attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of themself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1.      That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering them to cease from unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI/PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

5.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.      requiring Defendant to delete and purge the PHI/PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PHI/PII;

e.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks,

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    penetration tests, and audits on Defendant's systems periodically;

2    f.    prohibiting Defendant from maintaining Plaintiff's and Class Members'

3    PHI/PII on a cloud-based database;

4    g.    requiring Defendant to segment data by creating firewalls and access

5    controls so that, if one area of Defendant's network is compromised,

6    hackers cannot gain access to other portions of Defendant's systems;

7    h.    requiring Defendant to conduct regular database scanning and securing

8    checks;

9    i.    requiring Defendant to establish an information security training program

10    that includes at least annual information security training for all employees,

11    with additional training to be provided as appropriate based upon the

12    employees' respective responsibilities with handling PHI/PII, as well as

13    protecting the PHI/PII of Plaintiff and Class Members;

14    j.    requiring Defendant to implement a system of tests to assess its respective

15    employees' knowledge of the education programs discussed in the

16    preceding subparagraphs, as well as randomly and periodically testing

17    employees' compliance with Defendant's policies, programs, and systems

18    for protecting personal identifying information;

19    k.    requiring Defendant to implement, maintain, review, and revise as

20    necessary a threat management program to monitor Defendant's networks

21    for internal and external threats appropriately, and assess whether

22    monitoring tools are properly configured, tested, and updated; and

23    l.    requiring Defendant to meaningfully educate all Class Members about the

24    threats they face due to the loss of their confidential personal identifying

25    information to third parties, as well as the steps affected individuals must

26    take to protect themselves.

27    6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

CLASS ACTION COMPLAINT – 33

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

7. For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8. For all other Orders, findings, and determinations identified and sought in this Complaint.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: November 29, 2023

By: /s/ Samuel J. Strauss
Samuel J. Strauss, WSBA #46971
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423
sam@turkestrauss.com

Kevin Laukaitis (*pro hac vice* anticipated)
LAUKAITIS LAW LLC
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

*Attorneys for Plaintiff and the Proposed Class*

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com